(November 8, 1923.)

FRANK J. KLINE, EDWARD KLINE, JOSEPH J. KLINE, LOUISE TORMEY KLINE, LILLIAN A. KLINE, RENA A. SOUTHMAYD and MARY TORMEY KLINE, Heirs of JOHN TORMEY, Deceased, Appellants, v. W. H. SHOUP, as Administrator of the Estate of JOHN TORMEY, Deceased, and F. S. WRIGHT, Respondents.

[220 Pac. 45.]

PROBATE PROCEEDINGS—PROBATE COURTS — JURISDICTION — ORDERS AND DECREES — PRESUMPTION OF VERITY — ADMINISTRATOR'S SALE OF MINING PROPERTY—PETITION TO SELL—ORDER TO SHOW CAUSE— FAILURE TO SERVE OR PUBLISH — EFFECT OF — CAVEAT EMPTOR — ORDER EXTENDING TIME IN WHICH TO COMPLETE SALE—CONFIRMATION—FAILURE TO GIVE NOTICE—EFFECT OF.

1. Probate courts, under the constitution, have original and general jurisdiction of all matters concerning the probate and settlement of the estates of deceased persons. Their orders and decrees in such matters are entitled to the same verity as the orders and decrees of any other court of record.

2. The sale of the real property of a decedent's estate is a sort of special proceeding in the administration of the estate, which is begun by the filing of the petition to sell the real property and is ended by the confirmation of the sale and the delivery of the deed to the purchaser.

3. The power of the probate court to order a sale of land belonging to a decedent's estate arises not out of the jurisdiction which vested in that court at the time of the appointment of the administrator; but the jurisdiction to order such a sale results from the filing of a sufficient petition therefor and the issuance of an order to show cause why the sale proposed should not be made and due service thereof.

4. The requirement of the service of a copy of the order to show cause why an order to sell the real property of a decedent's estate should not be granted is jurisdictional, and a failure to substantially comply with such requirement renders the order of sale and all subsequent proceedings thereunder void as to the interest of any person not served.

5. Where it affirmatively appears that a copy of the order to show cause was neither served personally nor published, and

was not dispensed with by the written assent of those interested in the estate, all proceedings relating to the sale of the real property of a decedent's estate may not only be set aside on appeal but may also be set aside on motion in the probate court or by a proper proceeding in a court of equity.

6. The rule of *caveat emptor* is applicable to the sale of real property by an administrator.

7. An order of the probate court extending the time for the payment by the purchaser of the balance of the agreed consideration in a sale of mining property by bond and lease, without such notice as is required in the case of the postponement of a sale in an ordinary proceeding for the sale of the real property of a decedent's estate, does not necessarily render such sale void.

8. The confirmation of the sale of mining property of a decedent's estate, without notice thereof, when such sale is made by means of a bond and lease, does not necessarily render such sale void.

APPEAL from the District Court of the Sixth Judicial District, for Lemhi County. Hon. Ralph W. Adair, Judge.

Appeal to the district court from an order of the probate court vacating certain of its previous orders concerning the probate of an estate. Order of the probate court reversed by the district court. Judgment of the district court in part *reversed* and in part *sustained*.

John H. Padgham and Richards & Haga, for Appellants.

The proceeding for the sale of a mining property or other real estate of an intestate is an independent proceeding which is begun by filing the petition and is ended by the confirmation of the sale and the delivery of deed to the purchaser. (*Reed v. Stewart*, 12 Ida. 699, 87 Pac. 1002, 1152; *In re Spriggs Estate*, 20 Cal. 121; *Richardson v. Butler*, 82 Cal. 174, 16 Am. St. 101, 23 Pac. 9.)

The jurisdiction of the probate court in a proceeding for the sale of real estate of an intestate is derived solely from statute, is not included in the general jurisdiction over the administration, and is invoked by the filing of the statutory petition and depends upon substantial compliance with statutory provisions. (*Lamont v. Vinger,* 61 Mont.

530, 202 Pac. 769; *Estate of Boland v. Boland,* 55 Cal. 310; *Ethell v. Nichols,* 1 Ida. 741; *In re Byrne's Estate,* 112 Cal. 176, 44 Pac. 467; *In re Cook's Estate,* 137 Cal. 184, 69 Pac. 968; *Noon's Estate,* 49 Or. 286, 88 Pac. 673, 90 Pac. 673; *Willis v. Pauly,* 116 Cal. 575, 48 Pac. 709; *Wallace v. Grant,* 27 Wash. 130, 67 Pac. 578; *Pryor v. Downey,* 50 Cal. 388, 19 Am. Rep. 656.)

Title to real property vests in the heirs immediately upon the death of an intestate in this state, and the proceeding for sale of real estate of such intestate is one for forced divestiture of the title of the heirs and *quasi in rem,* and the failure to give notice and make services substantially as required by statute renders the sale void. (2 Black on Judgments, sec. 808; 23 Cyc. 1408; *Campbell v. Drais,* 125 Cal. 253, 57 Pac. 994; *Davis' Estate,* 35 Mont. 273, 88 Pac. 957; *Gassert v. Strong,* 38 Mont. 18, 98 Pac. 497.)

It is the theory and policy of the law of this state that every person interested in a probate matter shall have his day in court and for that purpose must be served with proper notice and given an opportunity to appear if he cares to do so, and, in the absence of waiver, notice to the heirs is indispensable. (*Reed v. Stewart,* 12 Ida. 699, 87 Pac. 1002, 1152; *Ethell v. Nichols, supra; Mikel v. Hicks,* 19 Kan. 578, 27 Am. Rep. 161; *Burris v. Kennedy,* 108 Cal. 331, 41 Pac. 458.)

The provisions of C. S., sec. 6726, requiring application for relief within six months after adjournment of the term does not apply to judgments and orders which are nullities and void from the beginning, and the motion to set aside such void judgments or orders is not limited as to time within which such application must be made. (*Shumake v. Shumake,* 17 Ida. 649, 107 Pac. 42; *Kearns v. Morgan,* 11 Ida. 572, 83 Pac. 954; *Luckenbach v. Krempel,* 188 Cal. 175, 204 Pac. 591; *Craig v. Craig,* 110 Kan. 13, 202 Pac. 594; *State v. District Court,* 38 Mont. 166, 99 Pac. 291; *Huffman v. Huffman,* 47 Or. 610, 86 Pac. 593; *People v. Greene,* 74 Cal. 400, 5 Am. St. 448, 16 Pac. 197.)

It is the office of the probate court to determine the heirs of an intestate and such determination is final unless an appeal is taken therefrom.   (*Glover v. Brown,* 32 Ida. 426, 184 Pac. 649.)

The proper procedure in attacking the proceedings of a probate court on sale of property of intestate is by appeal or motion in that court to set aside the orders complained of. (*Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358.)

The doctrine of *caveat emptor* applies to an administrator's sale, and the purchaser is bound to know the limit of the authority of the one who assumes to sell, determine at his peril whether the proceedings are legal, and, since it is only by law that the title of the heirs is taken, must in tracing his title through the law be able to show a substantial compliance with the same.   (11 R. C. L. 350; 18 Cyc. 826; *Gregory v. McPherson,* 13 Cal. 562; *Glover v. Brown, supra; Townsend v. Gorden,* 19 Cal. 188; *Towner v. Rodegeb,* 33 Wash. 153, 99 Am. St. 936, 74 Pac. 50.)

Burleigh & Glennon, for Respondents.

''Orders and decrees of a surrogate, or of a probate or orphans' court, in any case in which the jurisdiction has attached, are not open to contradiction or re-examination in any collateral proceedings.''   (23 Cyc. 1061, 1062; Van Fleet on Collateral Attack, sec. 1, p. 3.)

Their orders and judgments in regard to such matters can only be reviewed by proper motion in such courts made within the time allowed by statute or by appeal from their decisions.   (*Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358; *Connolly v. Probate Court,* 25 Ida. 35, 136 Pac. 206; *Fraser v. Davis,* 29 Ida. 70, 156 Pac. 913, 158 Pac. 233; *Estate of McVay,* 14 Ida. 64, 93 Pac. 31.)

Such judgments or orders are binding and conclusive upon all parties and upon all the world until the same are either modified or reversed on appeal.   Unappealed from they cannot thereafter be drawn in question because of any irregularity in the proceedings.   (*Grignon v. Astor,* 43 U. S. (2 How.) 319, 11 L. ed. 283; *United States v. Arredondo,*

31 U. S. (6 Pet.) 709, 8 L. ed. 554; Brown on Jurisdiction, secs. 141–143, notes.)

The confirmation or approval of the sale by the probate court is a judicial ascertainment and the decree so made is conclusive upon all parties until either reversed or modified on appeal. (*Florentine v. Barton,* 69 U. S. (2 Wall.) 216, 17 L. ed. 783; *Davis v. Gaines,* 104 U. S. 186, 26 L. ed. 758; *Matthews v. Densmore,* 109 U. S. 220, 3 Sup. Ct. 126, 27 L. ed. 912; *Larch v. Altman,* 79 Ind. 166; *Cooper v. Sunderland,* 3 Iowa, 114, 66 Am. Dec. 52; 2 Black on Judgments, sec. 633, and cases cited.)

"The jurisdiction to order a sale of decedent's property is special and ceases with the order of confirmation, so that thereafter a court granting a license has no power, by virtue of its jurisdiction previously existing, to reverse its proceedings and set a sale aside." (18 Cyc. 812, and cases cited; *In re Leonis,* 138 Cal. 194, 71 Pac. 171.)

The court has no power to vacate or set aside its judgment after the expiration of the six months' period fixed by the statute. (*Bunnell & Eno etc. Co. v. Curtis,* 5 Ida. 652, 51 Pac. 767; *Vane v. Jones,* 13 Ida. 21, 88 Pac. 1058; *Holzeman & Co. v. Henneberry,* 11 Ida. 428, 83 Pac. 497; *Hall v. Whittier,* 20 Ida. 120, 116 Pac. 1031; *Chandler v. Probate Court,* 26 Ida. 173, 141 Pac. 635.)

It is shown by the undisputed evidence that the purchasers of the property were innocent purchasers, without notice, for a valuable consideration, and that they had expended large sums of money in the improvement and development of the property prior to receiving any notice that the sale would be questioned. The rights of these purchasers should be made the first consideration of the court. (18 Cyc. 829; *Thompson v. Tolmie,* 2 Pet. (U. S.) 157, 7 L. ed. 381; *Florentine v. Barton, supra; Grignon v. Astor, supra; Tatum v. Iowa Water Co.,* 34 Cal. App. 55, 166 Pac. 817; *Morrissey v. Gray,* 162 Cal. 638, 124 Pac. 246; *Crew v. Pratt,* 119 Cal. 139, 51 Pac. 38.)

WM. E. LEE, J.—On October 21, 1916, John Tormey died intestate in Lemhi county, leaving an estate situate

therein consisting solely of mining property embracing eight undeveloped and unpatented mining claims, of which he was the original locator. William H. Shoup, of Lemhi county, who claimed to be a creditor of the deceased, filed in the probate court of said county a petition for appointment as administrator of the estate. Letters of administration were issued to him on December 5, 1916, and he qualified as administrator. Appraisers were appointed, and an inventory and appraisement was made and filed in which the mining claims were described and designated by name and appraised collectively in the sum of $1,500. Notice to creditors was published, and certain claims against the estate were allowed and approved by the court.

Decedent left no wife, children, issue of children, brothers or sisters, but it was subsequently determined by the probate court that, at the time of his death, he left surviving him Louise Tormey Kline, Lillian A. Kline, Mary Tormey Kline, Edward Kline and Joseph J. Kline, of Hartford, Connecticut, Frank J. Kline, of New York City, and Rena A. Southmayd, of Springfield, Massachusetts, who were sons and daughters of Mary Tormey Kline, deceased, a sister of John Tormey, deceased, and who were, therefore, nephews and nieces and lawful heirs of decedent, "and entitled to share in the distribution of his estate."

On June 25, 1917, the administrator filed in the probate court a petition for the sale of the mining property of the estate by way of a bond and lease. On the same day, the administrator filed in the probate court a written statement, signed by Louise Tormey Kline, Lillian A. Kline and Mary Tormey Kline, consenting to the giving of a bond and lease upon the mining property owned by the estate. An order to show cause was thereupon made, which was neither served personally upon all or any of the heirs nor published in a newspaper as provided by section 5501 of the Idaho Revised Codes, now C. S., sec. 7613. In fact, the order to show cause recited and directed that, because of the filing of the writing signed by the said three persons, publication and personal service be dispensed with. On

July 18, 1917, which was the date provided in the order to show cause; the court made and entered an order directing the administrator to sell or contract for the sale of the mining property of the estate. On July 20, 1917, the administrator entered into an agreement with F. S. Wright whereby the administrator "gave a title bond and lease to F. S. Wright . . . . with the right of purchasing the said property for the sum of seven thousand five hundred dollars, on or before the first day of December, 1918." Wright thereupon entered into possession of the mining property and worked the same. Thereafter, he elected to purchase the property, and a deed thereto was placed in escrow under an order of the court. On November 30, 1918, the administrator procured from the court an order extending the time for completing the sale under the said bond and lease. Two thousand dollars of the purchase price was thereupon paid, and thereafter the balance thereof, to wit: the sum of $5,500, was paid, and the deed was duly delivered. The administrator filed his return of sale, and the court made and entered its order confirming the sale.

On June 13, 1919, Mary Tormey Kline, one of the three heirs who consented to the sale of the property, died, and on September 30, 1920, the six remaining heirs filed in the probate court of Lemhi county a petition praying that the order of sale, order extending time within which to complete the sale, return of sale, and order confirming sale be vacated. The petition was based upon two grounds, to wit: lack of jurisdiction to make the orders, and fraud on the part of the administrator. Answers were filed by the administrator and Wright denying all the allegations of the petition, and alleging that inasmuch as seventeen months had elapsed since the order confirming the sale was made and filed, the matter could not be reopened. This petition came on for hearing, and on January 4, 1921, the court made and entered an order granting the petition. The administrator and Wright thereupon appealed to the district court of the sixth judicial district, for Lemhi county, from the order of the probate court of January 4, 1921, setting

aside and vacating said prior orders. A motion to dismiss the appeal was served and filed, and overruled by the district court. The appeal was heard, and on July 19, 1921, the district court made and filed findings of fact, conclusions of law and judgment reversing and setting aside the order of the probate court of January 4, 1921. This appeal is from the judgment of the district court.

One of the assignments of error is that the court erred in finding that the acts of the administrator concerning the administration of the estate and the sale of the mining property were in good faith, and that he did not withhold or conceal from the parties any information relative to the value and condition of the mining property. This finding of the court is amply sustained.

Appellants contend that the sale of the mining property of the estate is void in that it affirmatively appears from the record that the probate court did not have jurisdiction to make the order of sale and subsequent orders in the matter of the sale of the property. Respondents maintain that, while "there are admitted irregularities in the proceedings in the probate court and errors on the part of that court," the property was purchased in good faith, for a valuable consideration, without notice of any irregularities, and the sale should be sustained. Respondents also contend that the attack on the sale is collateral; that any errors committed should have been taken advantage of by appeal; and that, because of the fact that more than six months had elapsed since the order confirming the sale, the probate court was without jurisdiction to set the sale aside.

In order to effect an orderly transfer of the title to property from the deceased to the heir, and provide a method whereby the debts of the deceased may be realized out of the property left by him, the legislature has recognized the necessity of, and has provided for, an official administration of the estates of deceased persons. It is stated generally that the title to real property descends to the heir immediately upon the death of the owner. In order, however, to transfer the record title which was in the owner at the time of

38 Idaho.—14

his death, and to provide for the payment of debts, administration is required. The tribunal erected for the purposes of such administration is the probate court, and in this state, probate courts, under the constitution, have original and general jurisdiction of all matters concerning the probate and settlement of the estates of deceased persons. Their orders and decrees in such matters are entitled to the same verity as the orders and decrees of any other court of record. (*Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358; *Estate of McVay,* 14 Ida. 64, 93 Pac. 31; *Connolly v. Probate Court,* 25 Ida. 35, 136 Pac. 205; *Fraser v. Davis,* 29 Ida. 70, 156 Pac. 913, 158 Pac. 233.)

There is no doubt but that, upon the death of any person possessed of real property, the probate court of the proper county, upon complying with the statutory requirements as to petition and notice, order and issuance of letters, acquires jurisdiction to administer the estate. The law gives the probate court jurisdiction of the subject matter, and the filing of a sufficient petition and the due service of the notice provided vests the court with jurisdiction over the *res,* as well as over all persons interested in the estate, as to all the ordinary steps that are required to be taken in the administration of the estate. In the progress of administration, in the accomplishment of the various steps provided by law, the jurisdiction of which is acquired as hereinbefore stated, the probate court may commit error or may irregularly exercise such jurisdiction. To correct such error and to remedy any irregularities in the exercise of such general jurisdiction, appeal to the district court is provided. Such errors or irregularities may also be remedied by motion timely made in the probate court. It is generally held that the correction of such errors or irregularities can only be effected by appeal or motion. (*Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358.)

There are, however, certain steps to be taken in the administration of an estate which the law deems of sufficient importance to have placed without the power of the probate court to effect under the jurisdiction acquired over the

general subject matter by law, and over the estate and those interested therein by the filing and due service of the petition for the appointment of an administrator and the order of appointment and issuance of letters; and at least one of such steps is the sale of the real property of an estate for the payment of the debts of the deceased. C. S., sec. 7603, provides that "no sale of any property of an estate of a decedent is valid unless made under order of the probate court . . . . " From the foregoing, it cannot be denied that the law recognizes the issuance of an order of sale as an indispensable requisite in effecting a valid sale of the property of a decedent's estate. Upon the filing of the petition, C. S., sec. 7613, provides for the issuance and service of an order to show cause. Upon a compliance with the provisions of said sec. 7613, the probate court may, upon a hearing of the matter, issue an order of sale.

It has been held in this state, in *Reed v. Stewart,* 12 Ida. 699, 87 Pac. 1002, 1152, that the sale by an administrator of the real property belonging to an estate is a sort of special proceeding which is begun by filing the petition to sell the real property and is ended by the confirmation of the sale and delivery of the deed to the purchaser. The supreme court of California, in *In re Spriggs' Estate,* 20 Cal. 121, said:

"The proceeding for the sale of the real estate of an intestate is in the nature of an action, of which the presentation of the petition is the commencement, and the order of sale is the judgment."

See, also: *Pryor v. Downey,* 50 Cal. 388, 19 Am. Rep. 656; *Estate of Boland,* 55 Cal. 310; *Burris v. Kennedy,* 108 Cal. 331, 41 Pac. 458; *Lamont v. Vinger,* 61 Mont. 530, 202 Pac. 769.

Since, upon the death of an intestate, the title to his real property vests immediately in his heirs at law, it would seem reasonable to conclude that when the administrator files in the probate court a petition for an order to sell the real property of the estate, he assumes a relation to the heirs which is somewhat antagonistic, for, by so doing,

he is endeavoring to subject the land which belongs to the heirs to the payment of the debts of the deceased, of whom the administrator is personal representative. Bearing this thought in mind, it is apparent that the requirement of our statute that, upon the filing of a petition for the sale of the realty belonging to an estate, the court must issue an order to show cause why the land should not be sold, and must direct that a copy thereof be served personally upon ' every person interested in the estate, or published in a newspaper, is a recognition of the idea that the proceeding is, in theory at least, antagonistic to the heirs. And the fact that the statute provides that the real property of a decedent's estate can be sold only upon an order of the probate court, the issuance of which is conditioned upon the filing of a petition, an order to show cause and service thereof upon those interested in the estate in accordance with the requirements of the statute, is conclusive that the power of the probate court to order a sale of land for the payment of debts left by a decedent arises not out of the jurisdiction which vested in that court at the time of the appointment of the administrator, but that the jurisdiction to order the sale results from the filing of a sufficient petition, the issuance of the order to show cause and due service thereof on those interested in the estate. While the sale of property is within the general scope of administration, the law has provided what must be done before a valid order of sale can be issued, and we believe that compliance with such provisions of the law is essential to give validity to the order. (*Burris v. Kennedy,* 108 Cal. 331, 41 Pac. 458.)

The first requirement to vest the probate court with jurisdiction to order the sale of land for the payment of debts is the filing of a petition containing the necessary averments, and the second requirement to give the court jurisdiction in such special proceedings depends upon a substantial compliance with the requirements of the statute as to the service of notice. In the instant case, while considerable space in appellants' brief is devoted to an attack based

upon the alleged insufficiency of the petition, no assignment of error relates thereto, and the petition will be deemed sufficient.

The inquiry, therefore, and the question to be determined is whether the giving of notice to the heirs of an intestate in compliance with the statute is indispensable to vest the probate court with jurisdiction to issue a valid order to sell the real property of the estate. Upon the presentation of petition to sell the real property of an intestate, the statute provides that an order *must* be issued by the court directing all persons interested in the matter to appear before the court at a time and place specified and show cause why an order to sell such real property should not issue. (C. S., sec. 7613.) The same section then requires that a copy of such order to show cause "*must* be personally served on all persons interested in the estate at least ten days before the time appointed for hearing the petition, or published at least three successive weeks in such newspaper as the court shall specify." Personal service of such notice, or publication thereof, may be dispensed with "if all persons interested in the estate signify, in writing, their assent to such sale . . . . " (C. S., sec. 7613.)

This court held, in a case involving probate procedure, that it is a theory of our law that every person interested shall have his day in court, and for that purpose must be served with proper notice and given an opportunity to appear if he care to do so. (*Reed v. Stewart*, 12 Ida. 699, 87 Pac. 1002, 1152.)

In the case of *Lamont v. Vinger*, 61 Mont. 530, 202 Pac. 769, which holds that, in proceedings for the sale of real property by an administrator, it is the general rule that, in the absence of a waiver, notice to the heirs is indispensable, the supreme court of Montana, in explaining the reason for the necessity of this rule, said:

"The heirs, being interested in the property, have the right, secured to them by statute, to oppose the sale and to be heard. At such hearing they may offer any evidence tending to show that the sale is unnecessary, and since a

necessity for the sale is the only condition upon which it may be ordered, if they are successful in their contention the court is without authority to make the order. For example: Upon the hearing the heirs may contest the validity of the claims which constitute the indebtedness upon the existence of which the petition to sell is based. (*Beckett v. Selover*, 7 Cal. 215, 68 Am. Dec. 237; *Schroeder's Estate*, 46 Cal. 304; *Crosby's Estate*, 55 Cal. 574); or they may be able to show that the realty is yielding income sufficient to discharge all valid claims or to pay them in part, and thereby either dispense with the necessity for a sale altogether, or reduce the amount of the realty to be sold (*Haynes v. Meeks*, 20 Cal. 288); or they may be able to convince the court that the best interests of the estate will be served by borrowing the money (section 7547, Rev. Codes), or mortgaging the property instead of selling it (sections 7600, 7601); but whether they are successful in any respect is immaterial. They are entitled to be heard, and, if not afforded an opportunity, their interests cannot be affected. (*Pearson v. Pearson*, 46 Cal. 609.)"

In the same case, the court further said:

"Bearing in mind that immediately upon the death of the intestate, title to the property vests in the heirs, and that proceedings to obtain an order to sell the real property have for their object divesting the heirs of their title and are *quasi in rem* only, we conclude that the principle announced by the authorities that notice to the heirs and others interested and an opportunity to be heard are essential rests upon the fundamental rule of law incorporated in our Constitution that no one shall be deprived of his property without due process of law, and that notice and an opportunity to be heard are indispensable elements of due process."

In the instant case, at the time of the filing of the petition to sell the real property, the administrator filed, with the petition, the written assent of three of the heirs to the sale. It appears, however, that at the time of the filing of the petition for the sale of this land, instead of three, there

were seven persons who were heirs at law of the deceased. It further appears affirmatively that four of the heirs were not served with a copy of the order to show cause, that there was no publication of such order, that the four heirs did not consent, in writing or otherwise, to the sale of the land, and that the said four heirs had no notice, either actual or constructive, of the proceedings looking to the sale. Since it affirmatively appears that four of the persons interested in the estate had no notice of the proceedings to sell the land, it is our conclusion that, as to such unnotified and nonconsenting heirs, the order of sale and the proceedings had in reliance thereon were beyond the jurisdiction of the court and subject to be set aside. In other words, we hold that the service of the statutory notice is an indispensable requisite to vest the probate court with jurisdiction to order the sale of real property of the estate of a decedent, and that, where it appears affirmatively from the record that such service of notice was not made, and was not dispensed with by the written assent of those interested in the estate, all proceedings relating to the sale of the land may not only be set aside on appeal but may also be set aside on motion in that court or by a proper proceeding in a court of equity. (*Lamont v. Vinger,* 61 Mont. 530, 202 Pac. 769; *Burris v. Kennedy,* 108 Cal. 331, 41 Pac. 458; *Campbell v. Drais,* 125 Cal. 253, 57 Pac. 994; *Wills v. Pauly,* 116 Cal. 575, 48 Pac. 709; *Haynes v. Meeks,* 20 Cal. 288; *In re Noon's Estate,* 40 Or. 286, 88 Pac. 673, 90 Pac. 673; *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099; *Townsend v. Tallant,* 33 Cal. 45, 91 Am. Dec. 617; *Menefee v. Marge* (Va.), 4 S. E. 726.)

It is admitted that there is eminent authority to the contrary, a number of courts following the doctrine laid down by the supreme court of the United States in *Grignon's Lessee v. Astor,* 43 U. S. (2 How.) 319, 11 L. ed. 283. It is not necessary and would doubtless be impossible to harmonize the doctrine therein announced with the conclusion at which we have arrived. Those cases proceed upon the theory that the proceedings to sell the land of an intestate

are strictly *in rem.* The supreme court of Utah, in a very exhaustive opinion by Mr. Justice Frick, follows generally the case of *Grignon's Lessee v. Astor, supra.* However, in that case (*Barrette v. Whitney,* 36 Utah, 574, 106 Pac. 522, 37 L. R. A., N. S., 368), the court said:

"We remark that we do not wish to be understood as passing upon the effect of a failure to give notice upon an application for the sale of real estate by an administrator. Upon that subject our statutes speak in explicit terms, and we refrain from expressing any opinion."

The Idaho statutes, it may be said, require in explicit terms the giving of notice upon an application to sell real property. It may also be mentioned that there has not been called to our attention and neither has our investigation disclosed any case where any court has held that the failure to give the notice required by statute, upon an application to sell land, constituted a mere irregularity or an abuse of the probate court's jurisdiction subject to be taken advantage of only on appeal, where it appeared affirmatively in the record that no notice of any kind was given and that the sale was not consented to by the interested persons.

In *Glover v. Brown,* 32 Ida. 426, 184 Pac. 649, this court held, in a divided opinion, that the action of a probate court in decreeing the entire estate, consisting of the separate property of the deceased, to one heir to the exclusion of another heir, upon the theory that the estate was community property, was void and could be set aside at any time. In making that decree, the probate court had full and complete jurisdiction of the parties, and the decree was entered in a probate proceeding.

In *State v. Cunningham,* 6 Ida. 113, 53 Pac. 451, this court held that an administrator's sale of the land of a decedent is void where the sale was confirmed without the making and filing of a return of sale.

The following rule is announced in 11 R. C. L. 322, sec. 374:

"Since proceedings by an executor or administrator of an estate of a decedent to sell real estate are adverse to

the heirs at law, all parties in interest should be notified, including, of course, the heirs and devisees, and unless such notice is given the probate court will not have jurisdiction, and the sale will be void and pass no title to the purchaser."

In 24 C. J. 598, we find the following statement:

" .... If the record shows service which is insufficient and fails to show that the court found that it had jurisdiction, the presumption is rebutted and it must be held that the court acted upon insufficient notice." (See cases cited.)

The rule is stated as follows in 24 C. J. 592:

"As a general rule, a failure to give notice or to give proper notice is held to be jurisdictional and to render the order of sale and the sale thereunder nullities, at least as to the interest of persons not notified: (See cases cited.) But in a few jurisdictions the courts, regarding the proceeding to sell as being strictly *in rem,* look upon a failure to give notice as a mere irregularity which does not render the judgment void."

Respondents contend that under the authority of the decision in *Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358, the judgment of the district court should be affirmed. Upon a careful study of the opinion in that case, we find that while it is said to appear, from the allegations of the complaint, that no notice to show cause was served as required by statute, it is not stated that this court, or the district or probate court, found that the order to show cause why an order of sale should not be issued was not in fact served; and that decision does not hold that the failure to serve the order affirmatively appeared by the record. In *Clark v. Rossier, supra,* this court held that it was not necessary to pass upon the question of the service of the notice, but did find that the court had jurisdiction, and that the decree of a probate court cannot be attacked for irregularities in the exercise of its jurisdiction except in that court or on appeal from its decision. It is also held that the attack made in that case was collateral, and that the orders and judgments of a probate court cannot be attacked collaterally. Upon the theory that the probate court in that case had

acquired jurisdiction to make and issue the order of sale, and that the matters complained of constituted mere errors and irregularities in the exercise of its jurisdiction, there is nothing in that decision in conflict with the conclusion we have arrived at in this case. There is room for argument as to the correctness of our analysis of the decision in *Clark v. Rossier, supra,* but we refer to it in order that it may not be thought that the case was overlooked.

We do not deem it necessary to determine whether the attack in this case is collateral or direct. This court held, in *Shumake v. Shumake,* 17 Ida. 649, 107 Pac. 42, which was decided subsequently to the case of *Clark v. Rossier, supra,* as follows:

"But counsel for appellant contends that even though the clerk had no authority or jurisdiction to enter the judgment against the garnishee, still the court erred in setting aside such judgment, for the reason that the motion to set aside the same was not made within six months after the entry of such judgment, as provided ˙by sec. 4229, Rev. Codes. This provision of the statute, which requires application for relief from a judgment to be made within six months after the adjournment of the term, does not apply to judgments and orders which are nullities and void from the beginning. (*Kerns v. Morgan,* 11 Ida. 572, 83 Pac. 954.) If, therefore, the judgment entered by the clerk was void because of want of jurisdiction to enter the same, a motion to set aside such void judgment could be made at any time, and the moving party is not limited as to time within which such application is to be made."

See, also, *Miller v. Prout,* 33 Ida. 709, 197 Pac. 1023; *Jensen v. Gooch,* 36 Ida. 457, 211 Pac. 551; *Luckenbach v. Krempel (Laer),* 188 Cal. 175, 204 Pac. 591; *Huffman v. Huffman,* 47 Or. 610, 114 Am. St. 943, 86 Pac. 593.

We are not unmindful of the hardship which this view of the law imposes upon a purchaser at an administrator's sale, who parts with a valuable consideration for the property and later finds his title defective. However, as between such a person and lawful heirs of a decedent, who

have not been notified, either actually or constructively, of the intended sale, we feel it is better to place the greater burden upon the former. He knows of the proceedings to sell; he has access to the record; and he can determine the administrator's authority to pass title. The heirs, on the other hand, not having received notice, are helpless to safeguard their interests.

Respondents contend that a purchaser is not bound to go behind the order of sale to ascertain if it was regularly made or to investigate whether the directions of law were in all respects complied with. This court has held, however, that the rule of *caveat emptor* is applicable to sales by an administrator. (*Glover v. Brown,* 32 Ida. 426, 184 Pac. 649; *Towner v. Rodegeb,* 33 Wash. 153, 99 Am. St. 936, 74 Pac. 50.)

The original petition filed in the probate court to set aside the order of sale and subsequent proceedings was not only in behalf of the heirs who had not consented to the sale and upon whom no notice had been served, but it was also filed on behalf of the three who had assented in writing to the sale proposed by the administrator in his petition. As to the rights of the latter, we are of opinion that a different rule should apply. It is claimed by counsel, however, that, even though they may be bound by their assent to the proposed sale, the petition did not state sufficient facts to give the court jurisdiction to order the property sold; that the transfer to which they gave their written assent was not the transfer finally accomplished; that the court, without any notice to them, extended the time for completing the sale; and that no notice was given of the confirmation.

As to the petition, as above stated, no assignment of error is contained in the brief relating to its alleged insufficiency, and even though such assignment existed, the petition, in our opinion, was not jurisdictionally deficient, since it did substantially contain the matters required by the statute to give the court jurisdiction, even though the petition might not have been held sufficient upon a proper attack

in the probable court or on appeal. (*Plains Land & Improvement Co. v. Lynch*, 38 Mont. 271, 99 Pac. 847.)

The three consenting heirs gave their written assent to the giving, by the administrator, of a bond and lease covering the mining property. A bond and lease was finally executed by the administrator by order of the court, and under the bond and lease the purchaser paid the consideration and received the administrator's deed. The sale finally accomplished was, therefore, substantially what the three heirs assented to.

The contention that the action of the probate court in extending the time within which the purchaser should pay the balance of the agreed consideration under the bond and lease, without notice to the persons interested in the estate, resulted in the invalidity of the proceedings is not well taken. It must be borne in mind that this was not an ordinary sale of the real estate of a decedent, but it was the sale of mining property effected by the giving of a bond and lease. Under this arrangement, a deed to the property was placed in escrow to be delivered to the purchaser upon his payment of the agreed consideration. Such an arrangement is provided by statute. (C. S., sec. 7615.) That section also provides that when such mining property is ordered sold outright, " . . . . such sale must be made and such proceedings had as are provided for in the sale of other real estate and property . . . . " Had this been an ordinary sale, no doubt the sections of our statute relating to a postponement of sale would apply. All the argument of appellants is directed to the results they claim are bound to arise from the postponement of an ordinary sale of the real property of a decedent's estate; and they have not directed us to any authority or pointed out any reason for holding that the action of the court in extending the time for completing the payment of the agreed consideration in the case of a sale by bond and lease, without notice, would render the proceedings void. And, in view of the fact that this was not an ordinary sale, this court would not be justified in holding that a failure to comply

with the statutes relating to the postponement of an ordinary sale would render this sale void. The statute last quoted from further provides:

" . . . . But, if it be for the bonding or contracting for the sale thereof, the administrator . . . . must be authorized to enter into a bond or contract for the sale, and, when necessary, to make and fully execute and place in escrow at some place approved by such judge a proper deed of conveyance for the property . . . . "

Ordinarily, in the case of a sale of the real property of a decedent's estate, upon the hearing of the return of sale, the probate court must examine the return and the witnesses and determine if the proceedings were unfair, or the sum bid disproportionate to the value of the property, and if it appear that a sum exceeding such bid by at least ten per centum thereof, exclusive of the expense of a new sale, be offered for the real property to be sold, the court may vacate the attempted sale and direct another sale. The court may also confirm the sale and direct that a conveyance be executed.

But, in the sale of mining property by contracting and bonding, the law has provided a different course to be followed. In the sale of mining property, the law permits the administrator to enter into a contract for the sale, and to make, execute and place in escrow a deed of conveyance of the property. The law certainly does not contemplate that the probate court, after the specified consideration had been paid to the escrow holder and the deed delivered to the purchaser, as was done in this case, would have the power to order a resale, even though ten per centum additional could be obtained. Neither was it necessary in this case for the court, upon confirmation, to order the execution of a conveyance as in the case of an ordinary sale, for the deed had already been executed and delivered. In fact, it would seem that, in disposing of mining property by bond and lease, the order of sale determines most matters of importance that are determined upon confirmation in an ordinary sale of the real property of an intestate.

A confirmation of the sale of mining property by an administrator is necessary to inform the court so that it may be in a position to determine whether or not the administrator has complied with the requirements of the statute and the court's orders. The confirmation by the court of the sale of the land of a decedent's estate is a judicial determination by the court of the validity and legality of the sale. We have been furnished with neither reason nor authority for holding that, this being a proceeding to sell mining property by bond and lease, or by bonding and contracting, and not by ordinary sale, under the peculiar provisions of C. S., sec. 7615, quoted above, the failure to give notice of the hearing upon the confirmation, provided in case of the ordinary sale of real property, was jurisdictional.

The judgment of the district court is affirmed as to Louise Tormey Kline, Lillian A. Kline and Mary Tormey Kline, and reversed as to Edward Kline, Joseph J. Kline, Frank J. Kline and Rena A. Southmayd. No costs allowed.

Budge, C. J., and McCarthy and Dunn, JJ., concur.

### ON REHEARING.

### (May 31, 1924.)

PER CURIAM.—A rehearing was granted, and the case has once more been argued and briefed. Respondents have again moved to dismiss the appeal. We have given careful consideration to the arguments on rehearing and to the motion to dismiss. We adhere to the views originally announced, and deny the motion to dismiss the appeal.